**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **RICHARD FUNARI,** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. 20-cv-03474-SAG** |
| | * | |
| **MARYLAND DEPARTMENT OF PUBLIC** | * | |
| **SAFETY & CORRECTIONAL** | * | |
| **SERVICES,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Richard Funari ("Plaintiff") filed a First Amended Complaint ("FAC") against Defendant Maryland Department of Public Safety & Correctional Services ("DPSCS"); its Secretary, Robert Green; and the Warden and several correctional officers employed at the Men's Rehabilitation Diagnostic and Classification Center ("MRDCC"). ECF 27. Presently, Defendant Green has moved to dismiss the FAC. ECF 34. Plaintiff filed an opposition, ECF 36, and Green filed a reply. ECF 41. This Court has reviewed these filings and determined that no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Green's motion will be granted.

## I.    FACTUAL BACKGROUND

The following facts are derived from the FAC and are assumed to be true for purposes of this motion. ECF 27. Plaintiff was scheduled to be released from MRDCC on October 18, 2019. *Id.* ¶ 56. On that date, in the receiving and intake area of MRDCC, Plaintiff signed documentation indicating he had been released from DPSCS custody. *Id.* ¶¶ 57-58. Officers directed Plaintiff to the medical area to retrieve his prescription medications as part of his release. *Id.* ¶ 59. In the

medical area, another inmate asked Plaintiff for his DPSCS-issued shoes, since Plaintiff would be wearing another pair to leave the facility. *Id.* ¶ 61. Plaintiff gave his shoes to the inmate. *Id.* ¶ 62. Defendant Sgt. Paula Faison saw the exchange and told Plaintiff he was going back to his cell. *Id.* ¶ 64. Plaintiff responded that he was already released and would be leaving once he had his medication. *Id.* ¶ 65. Faison then ordered Defendant officers Reed, Lann, and other unknown correctional officers to forcibly remove Plaintiff from the medical area. *Id.* ¶ 66.

Approximately a dozen correctional officers "swarmed Plaintiff and began punching him, kicking him, and spraying him in the fact with mace within a range of centimeters." *Id.* ¶ 67. They placed Plaintiff in handcuffs and punched him in the eye. *Id.* ¶¶ 70-71. They then dragged him throughout MRDCC by his arms and legs, while other correctional officers continued to beat him and spray him with mace. *Id.* ¶ 72. They took him to the end cell of the tier and left him on the floor of the cell without offering medical attention or providing him any means of cleaning the mace from his face. *Id.* ¶¶ 74-76. Plaintiff suffered bodily injuries including contusions and lacerations to his left eye, cheek, and forehead, a fractured rib, and significant head trauma. *Id.* ¶ 77. The incident was not captured on video footage despite the presence of video cameras in MRDCC. *Id.* ¶ 73.

Plaintiff's family members attempted to contact MRDCC about Plaintiff's release. *Id.* ¶ 80. One officer told Plaintiff's mother that he would not be released until 11:59 PM on October 18, 2019 because he "got smart." *Id.* ¶ 82. Towards the end of the night, officers came to the cell and gave Plaintiff a pair of dry jeans before his release. *Id.* ¶ 83.

Plaintiff alleges that Green is responsible for enacting and implementing policies for training, supervision and discipline at DPSCS facilities. *Id.* ¶¶ 2-3. He further alleges that during the time period in question, "excessive physical discipline effectively replaced a legitimate process

to address inmate misconduct at MRDCC." *Id.* ¶ 4.  Plaintiff alleges two other incidents in which "DPSCS correctional officers" engaged in violence against him, though he does not specify the dates of those incidents, the facilities at which they occurred, or the identities of the offending officers. *Id.* ¶¶ 5-6, 47-55.  He further alleges that he "became a target of Defendants' excessive force because of these two prior complaints to the Inmate Grievance Office and the Internal Investigations Unit." *Id.* ¶ 8.  He alleges that Green "had knowledge of [the MRDCC Warden's] implementation of policy concerning vigilantism and violence as a means of inmate and detainee control" through his receipt of and access to databases of complaints, administrative grievances, and lawsuits. *Id.* ¶¶ 38-40.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.

In addition to the plausibility standard set forth in *Twombly*, fraud-based claims are subject to heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017);

*Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650

F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  However, a court is not required

to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from

the factual allegations, assuming the truth of only the factual allegations, and then determining

whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought.  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert.*

*denied*, 566 U.S. 937 (2012).

## III.     ANALYSIS

The FAC asserts five claims against Green: Excessive Force pursuant to 42 U.S.C. § 1983

(Count One); Cruel & Unusual Punishment pursuant to 42 U.S.C. § 1983 (Count Two); Negligent

Hiring, Training, and Retention (Count Six); Violation of First Amendment free speech rights

pursuant to 42 U.S.C. § 1983 (Count Eight); and Violation of free speech rights in violation of

Article 40 of the Maryland Declaration of Rights (Count Nine).  Each Count is analyzed below.

### A.  The § 1983 Claims (Counts One and Two)

Generally, § 1983 allows a plaintiff to sue a person who, acting under color of state law,

"subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  To state a viable § 1983 claim, a plaintiff must allege

that a person acting under color of state law violated a right secured by the Constitution or laws of

the United States.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires personal

action on the part of the defendant, and does not permit respondeat superior liability.  *See Iqbal*,

556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution."); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (requiring a

plaintiff to affirmatively show that an official personally deprived the plaintiff of his rights).

Green, as Secretary of DPSCS, is not alleged to have been present at MRDCC on October 18, 2019

or to have participated personally in the incident involving Plaintiff. A claim for supervisory

liability in a § 1983 action, then, demands specific allegations to establish the requisite personal

conduct:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed a pervasive and unreasonable risk of
> constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that
> knowledge was so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices; and (3) that there was an
> affirmative causal link between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted).

A plaintiff may show deliberate indifference by alleging a supervisor's "continued inaction in the

face of documented widespread abuses." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

However, a plaintiff assumes a heavy burden of proof in establishing deliberate indifference

because:

> [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single
> incident or isolated incidents, for a supervisor cannot be expected to promulgate
> rules and procedures covering every conceivable occurrence within the area of his
> responsibilities. Nor can he reasonably be expected to guard against the deliberate
> criminal acts of his properly trained employees when he has no basis upon which
> to anticipate the misconduct.

*Id.* at 373 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980) (internal citations

omitted)).

To the extent Plaintiff intended to state a claim against Green in his personal capacity for supervisory liability, he has not included sufficient allegations to plausibly do so.  Plaintiff's allegations that Green, as Secretary of DPSCS, has access to all the records of inmate grievances does not suggest that Green "had actual or constructive knowledge" that any subordinate posed a pervasive and unreasonable risk of constitutional injury to Plaintiff.  The content of the grievance records is not alleged, and any agency or administrator of large-scale prison facilities will receive a plethora of grievances and complaints about those facilities.  Plaintiff has not alleged any specific incidents, other than the one on October 18, 2019, in which any Defendants in this case were involved in any other deprivation of any inmate's constitutional rights.  Plaintiff's cursory description of two other incidents in which prison officials behaved in a violent manner towards him does not advance his argument, particularly as he provides no basis to infer that the incidents even happened at MRDCC or involved any identical actors.  In the absence of any alleged facts that, if known by Green, would have led him to conclude that conditions or individuals at MRDCC posed a "pervasive and unreasonable risk" of constitutional injury to Plaintiff, Plaintiff's FAC against Green in his personal capacity does not meet the *Iqbal/Twombly* standard.

Even if alternatively interpreted as a *Monell* claim against DPSCS, and therefore lodged against Green in his official capacity as Secretary, Plaintiff has not stated a viable claim.  *Monell* held that a municipality may be subject to suit under § 1983 where individual defendants violate a plaintiff's rights in the execution of an official municipal policy or custom. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978).  Municipalities, however, are not otherwise vicariously liable for their employees' actions.  *Id.* at 691.  Thus, to impose liability, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation" of the plaintiff's

rights. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Plaintiff suggests that DPSCS, through Green in his official capacity as Secretary, established a policy or custom of condoning the use of violence as a punitive measure by the correctional officers. *See* ECF 27 ¶ 97 ("Defendants were acting pursuant to DPSCS policy as implemented and ratified by . . . Green when exacting punishment on Mr. Funari.").

The FAC does not identify any particular official policy or custom, but instead appears to allege that the use of "vigilantism" and violence essentially became a de facto custom. "[A] municipal custom may arise if a practice is so 'persistent and widespread' and so 'permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691). A custom may exist where "the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Certainly, the standard for alleging a viable *Monell* claim is easier to meet than the standard for ultimately proving *Monell* liability. *See Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier."). Even so, the factual allegations sufficient to survive a motion to dismiss must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Here, there are no such facts as pled. The FAC lists no other incidents of violence or other specific misconduct at MRDCC, even by general description. Mere boilerplate allegations of a "culture of violence and vigilantism," without any supporting or descriptive facts, do not allow this Court to infer knowledge and deliberate indifference on the part of the

municipality.  Thus, the § 1983 claims against Green are insufficiently pled, whether interpreted as *Monell* or supervisory liability claims, and will accordingly be dismissed.

### B.  Negligent Hiring Training, Retention, and Supervision

Count Six is a Maryland state law claim for negligent hiring, training, retention, and supervision.  To state such a claim, a plaintiff must allege that the supervisor knew or should have known of an employee's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action."  *Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996).  "Under Maryland law, an employer's liability in this regard is not to be reckoned simply by the happening of the injurious event.  Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee . . . or in supervising or training the employee."  *Gay v. United States*, 739 F. Supp. 275, 277 (D. Md. 1990) (citing *Cramer v. Housing Opportunities Commission*, 304 Md. 705, 501 A.2d 35 (1985)).

With respect to training, Plaintiff makes no specific allegations about any faulty training that was provided, or any training that should have been, but was not, provided to correctional officers at MRDCC.  Thus, Plaintiff has not plausibly alleged that the officers' decision to engage in the alleged intentional wrongful conduct (here, the physical assault of Plaintiff) resulted from some training deficiency.  *See, e.g.*, *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756737, at *4 (D. Md. Aug. 7, 2018) (explaining a failure to train claim requires plausible allegations "that the officer's conduct resulted from [the alleged deficient] training"); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (noting that "the identified deficiency in a city's training program must be closely related to the ultimate injury" for liability to attach).  The allegations here are not that the officers were confused or misguided about whether they could act violently towards inmates in the facility, but that they intentionally engaged in such misconduct, as they had on a

9

regular basis. The generic failure to train allegations cannot create an adequate link to the officers' alleged conduct.

Plaintiff's claims against Green for negligent hiring, retention, or supervision fare no better. To proceed to discovery, Plaintiff must allege that Green should have known there was some issue with the hiring or retention, or the supervision of, the individual officers involved in this incident. For example, Plaintiff might have a factual basis for a claim if Green should have known from officers' backgrounds before they were hired that they were prone to unconstitutional or violent conduct, or alternatively, if Green allowed officers to continue on the job after committing prior violent acts. Here, though, Plaintiff makes absolutely no allegations of any such thing as to Green or any DPSCS official. In fact, he does not allege that any of these officers were engaged, either before or during their DPSCS employment, in any other incidents. As pled, then, Count Six is also subject to dismissal against Green for failure to state a viable claim.

### C. Free Speech Violations

On April 7, 2021, this Court entered an Order adjudicating a motion to dismiss filed by the other Defendants. ECF 20. In that letter order, the Court ruled that the Defendants' motion to dismiss had to be granted as to Count Eight, which alleged that the officers violated Plaintiff's First Amendment Rights by assaulting him in retaliation for prior grievances he had filed. This Court noted that "[e]ven viewing the allegations in the Complaint as true and drawing all inferences in Plaintiff's favor, he has alleged no facts to plausibly establish a causal connection between his prior grievances and the events at issue in this case."[1] *See id.* at 1 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (upholding dismissal of a prisoner's First Amendment

---

[1] In fact, Plaintiff's free speech claim, suggesting that he was targeted particularly for prior grievances, is in direct contradiction to his remaining claims, which assert that the beating he suffered from the correctional officers was part of standard operating policy at DPSCS.

retaliation claims in part because assertions of causation were conclusory).  This Court continued, "Plaintiff does not allege the dates of the prior incidents, any overlap among the involved individuals, or even facts allowing an inference that the officers involved in the instant incident had knowledge of his prior complaints." *Id.*  Because, then, Plaintiff's Complaint was devoid of any factual allegations rendering the claim plausible, this Court dismissed Count Eight without prejudice.  Plaintiff nonetheless still included Count Eight and Count Nine, an identical claim premised on state law, without any new supporting factual allegations in the FAC.[2]  Both claims are subject to dismissal without prejudice for the same reasons stated in the April 2, 2021 order.  Green's motion to dismiss those claims will therefore be granted.

## IV.   CONCLUSION

For the reasons set forth above, Green's motion to dismiss, ECF 34, will be granted, and the claims against him will be dismissed without prejudice.  A separate Order follows.


Dated: April 8, 2022                                        _____/s/_____
                                                                          Stephanie A. Gallagher
                                                                          United States District Judge

---

[2] This Court acknowledges that its ruling here would likely apply equally to certain pending claims against the other supervisory Defendant, Warden Friday.  It does not appear that Friday or any Defendants other than Green have filed a formal response to the FAC.  They should do so within fourteen days of this Memorandum Opinion and Order.