## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **RICHARD FUNARI,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-20-3474** |
| **MD DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES, et al.,** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM OPINION</u>

On January 17, 2024, a jury returned verdicts awarding Plaintiff Richard Funari $2,750,000 in compensatory damages for his claims of excessive force, battery, and gross negligence against Defendants Maryland Department of Public Safety and Correctional Services ("MDPSCS") and its two correctional officers, Joseph Reed and Damon Lann. ECF 109, 110. Defendants have filed a motion for remittitur or for a new trial. ECF 124. Plaintiff has filed an opposition, and Defendants have filed a reply. ECF 125, 127. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion will be GRANTED IN PART and a new trial will be ordered on the issue of damages alone.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from a physical interaction between Plaintiff and several correctional officers employed by the MDPSCS, including Danielle Faison, Joseph Reed, and Damon Lann. On December 9, 2021, Plaintiff filed an Amended Complaint against the MDPSCS and those officers, alleging excessive force in violation of Section 1983 via the Fourth and Eighth

Amendments of the U.S. Constitution and their state constitutional counterparts, [1] as well as battery, false imprisonment, and gross negligence. ECF 27. The case proceeded to a five-day jury trial from January 8 to 12, 2024. ECF 98 to 102.

The incident in question occurred on October 18, 2019 at the Men's Rehabilitation Diagnostic and Classification Center ("MRDCC"), when Plaintiff was due to be released from the facility. ECF 119 (Trial Tr., Vol. IV) at 29:1–6. While Plaintiff was seated in the medical area with other pending releasees, another inmate asked him for his boots. *Id.* at 29:21–23. The correctional officer in charge of the release process, Faison, instructed Plaintiff not to give the boots to the inmate. *Id.* at 29:23–24. Faison turned away to process other individuals, but when she returned, she saw that Plaintiff was not wearing his boots. ECF 117 (Trial Tr., Vol. II) at 136:18–21. Because Plaintiff disobeyed her instructions, Faison called for assistance from other officers, including Reed and Lann, so that they could escort Plaintiff back to his housing unit. ECF 118 (Trial Tr., Vol. III) at 13:1–16. When the other officers arrived, Plaintiff objected to being taken back to the housing unit. Trial Tr., Vol. IV at 33:6–9.

What happens next depends on whose testimony one believes. According to Plaintiff's testimony, the officers roughly grabbed both his hands and feet, and carried him, face down, towards the housing unit. *Id.* at 34:3–35:20. Lann kicked his glasses aside and punched him twice in the face. *Id.* at 38:1–23. The officers carried Plaintiff up the stairs, slammed him on top of a desk, sprayed him directly in the face with mace, and shoved him off the other side of the desk. *Id.* at 39:9–15. They then kicked him in the body and ribs, grabbed him by his pants leg, and dragged him down a set of stairs such that his head hit each stair. *Id.* at 39:16–40:40. They pepper-sprayed

---

[1] The Amended Complaint lists Articles 16, 24, and 25 of the Maryland Declaration of Rights as the state constitutional counterparts to the Fourth and Eighth Amendments. ECF 27 ¶¶ 87–117.

him again, totaling at least five to six times. *Id.* at 41:5–8. Two large officers placed their knees and boots on his back and neck, pulling his legs towards his head. *Id.* at 40:18–41:20.

The officers' version of events, of course, differs. According to their testimony, Lann escorted Plaintiff to the housing area, without the assistance of other officers. Trial Tr. Vol. III at 109:9–110:22. Lann ordered Plaintiff to go into a cell, but instead, he walked towards the exit. *Id.* at 111:24–112:20. Lann then grabbed Plaintiff, who physically resisted by swinging his arms and headbutting Lann. *Id.* at 112:21–114:10. Reed pepper-sprayed Plaintiff and tried to get handcuffs on him. Trial Tr., Vol. II at 61:18–62:14. Plaintiff resisted those efforts, so Reed and Lann took him to the ground. *Id.* at 62:15–63:8. Once they handcuffed him, they escorted him to the medical unit and ordered him to sit down. Trial Tr. Vol. III at 117:14–18. But Plaintiff kept getting up and began to kick towards Lann and Reed, so they took him back to the ground to regain control, and Reed pepper-sprayed him a second time. *Id.* at 117:19–119:6.

Plaintiff testified that he suffered physical injuries and mental anguish from the incident. For his physical injuries, he saw a family nurse practitioner, Angela Long, at ExpressCare on October 19, 2019, the day after the incident. Trial Tr., Vol. II at 7:4–13. She observed numerous bruises and abrasions to his face, neck, ribs, and abdomen. *Id.* at 9:4–10:23. She prescribed him two pain relief medications. *Id.* at 14:3–23.

Plaintiff testified that he suffered a pinched nerve that felt like a sprain for several days after the incident. Trial Tr., Vol. IV at 44:5–10. He stated that after several days, that sprain developed into "the most significant burning, searing pain" across his neck and arms, for which he immediately sought treatment at the emergency room in Mercy Medical Center. *Id.* at 44:11–15. Plaintiff admitted, however, that he already had arthritis and a deteriorated disc in his neck before the incident took place. *Id.* at 44:4–5. Specifically, he had a muscular issue with his neck that he

exacerbated when he fell from seizures unrelated to the incident. ECF 120 (Trial Tr., Vol. V) at 120:4–121:6.

On October 23, 2019, five days after the incident, Plaintiff saw a primary care physician, Dr. Ali Thaver, at Jai Medical Center. ECF 116 (Trial Tr., Vol. I) at 37:7–23. Dr. Thaver referred Plaintiff to get an MRI and to receive pain management and physical therapy. *Id.* at 39:18–21. Plaintiff got an MRI after several months. *Id.* at 19:7–10. He also went to pain management for six months and was prescribed medication that he claimed was not completely successful in reducing his pain. Trial Tr., Vol. IV at 19:15–20, 44:16–21. For pain relief, he took prednisone steroids on a temporary basis. *Id.* at 44:22–45:1. Plaintiff went to physical therapy, twice a week, for seven to eight months. *Id.* at 45:2–4, 46:1–3. He testified that the therapy was somewhat successful in relieving tension, but he discontinued it because it did not necessarily alleviate his pain and he did not believe it was beneficial enough to continue. *Id.* at 45:5–22.

For the first six months after the incident, Plaintiff's nerve pain was present "24/7" and it felt like "somebody had a jackhammer on [his] funny bone." *Id.* at 47:2–9. He testified that the pain affected his ability to brush his teeth or shave as well as his sexual performance. *Id.* at 46:18–24. He also testified that the pain affected his mood such that he was "unable to be really functional and do much of anything." *Id.* at 47:18–21. He said it was depressing to just lay around the house and to be prevented from doing things he would normally do, like going out to eat and taking his girlfriend to the movies. *Id.* at 47:22–48:8.

Plaintiff's mother, Patricia Funari, testified that Plaintiff became more withdrawn, sad, and depressed, and was not able to help around the house like he used to, including moving and lifting things. *Id.* at 11:18–12:15, 48:10–22. Plaintiff testified that this development made him feel useless

and "less of a man." *Id.* at 48:24–49:2. He stated that the nerve pain "still comes and goes" today. *Id.* at 47:2.

After Plaintiff's submission of all evidence, Defendants moved for judgment as a matter of law on all claims. *Id.* at 82:16–100:13, 127:7–128:16. This Court granted judgment for Defendants as to the Fourth Amendment claim, its state constitutional counterpart, the false imprisonment claim, and all claims against Defendant Faison. *Id.* at 100:14–102:7. The case proceeded against Lann and Reed with respect to the Eighth Amendment claim, its state constitutional counterpart, and state law claims for battery and gross negligence. *Id.* at 102:20–103:19; 127:16–18.

Plaintiff only pursued compensatory, non-economic damages for his claims. Although he had requested punitive damages in his Amended Complaint, ECF 27, he withdrew his request during the jury charge conference.

The jury found that both Lann and Reed used excessive force, and committed battery and gross negligence, against Plaintiff. ECF 109, 110. With respect to Lann, the jury awarded Plaintiff $1,125,000 on the excessive force claims, $125,000 on the battery claim, and another $125,000 on the gross negligence claim. ECF 109. With respect to Reed, the jury also awarded Plaintiff $1,125,000 on the excessive force claims, $125,000 on the battery claim, and another $125,000 on the gross negligence claim. ECF 110. Put differently, the jury awarded $1,375,000 in compensatory, non-economic damages against Lann and the same amount against Reed, resulting in a verdict totaling $2,750,000.

## II.    LEGAL STANDARD

"[A] remittitur, used in connection with Federal Rule of Civil Procedure 59(a), is [an] established method by which a trial judge can review a jury award for excessiveness." *Atlas Food Sys. & Svcs., Inc. v. Crane Nat'l Vendors*, 99 F.3d 587, 593 (4th Cir. 1996). Remittitur is a process by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive

jury award. *Id.* A jury's damage award may be deemed excessive when it is "against the clear weight of the evidence" or "is based upon evidence which is false." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (quoting *Atlas Food*, 99 F.3d at 594). In making this determination, the court "may weigh the evidence and consider the credibility of witnesses." *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1237 (4th Cir. 1995) (quoting *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989)). The decision as to whether a jury award is excessive and should be subject to remittitur is a question of law that lies within the discretion of the trial court and "will be reversed on appeal only upon a showing of abuse of discretion." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 280 (4th Cir. 1999) (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 438–39 (1996)); *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 271 (4th Cir. 2002) (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998)).

As an alternative to remittitur, Defendants may also seek a new trial pursuant to Federal Rule of Civil Procedure 59(a). Like the decision of remittitur, the decision to grant a motion for a new trial lies within the discretion of the district court and should only be exercised if the jury verdict "is against the clear weight of the evidence" or "is based upon evidence which is false." *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010) (quoting *Chesapeake Paper*, 51 F.3d at 1237). Put differently, such a motion should be granted only when it "is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 599 (D. Md. 2012) (quoting *Pathways Psychosocial v. Town of Leonardtown, Md.*, 223 F. Supp. 2d 699, 706 (D. Md. 2002)).

A district court must apply state law to state law claims when it considers a Rule 59(a) motion because the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court.

*Konkel*, 165 F.3d at 280 (citing *Gasperini*, 518 U.S. at 429); *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022)). Under Maryland state law, a trial judge may order a remittitur or grant a new trial if the jury verdict is grossly excessive, shocks the conscience of the court, is inordinate, outrageously excessive, or even simply excessive. *Banegura v. Taylor*, 541 A.2d 969, 976 (Md. 1988) (citing *Conklin v. Schillinger*, 257 A.2d 187, 197 (Md. 1969); *Dagnello v. Long Island R. Co.*, 289 F.2d 797, 802 (2d Cir. 1961)).

A court may, in its discretion, grant the right to a new trial "on all or part of the issues." FED. R. CIV. P. 59(a). A partial new trial may be granted, however, only if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 290 (4th Cir. 2000) (quoting *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931)). Courts have commonly granted partial new trials confined to damages. *See, e.g.*, *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 511 F.2d 839, 847–48 (4th Cir. 1975).

### III.    ANALYSIS

After careful review of the record, this Court finds that the jury's award of $2,750,000 in compensatory damages is grossly excessive and against the clear weight of the evidence. Although Plaintiff undoubtedly suffered some physical injuries and mental anguish in the weeks and months following the incident, he has barely offered any testimony or evidence that his injuries or anguish persisted into the future. Plaintiff also has not submitted any medical records or other documentation to support a finding that he suffered $2,750,000 in damages.

In terms of physical injuries, Plaintiff reported having bruises and abrasions during his visit to a nurse practitioner the day after the incident. Trial Tr., Vol. II at 7:4–10:23. He also testified that he suffered a pinched nerve that produced a searing pain across his neck and arms, for which he went to the emergency room at Mercy Medical Center. Trial Tr., Vol. IV at 44:11–15. He

underwent pain management and physical therapy for approximately seven months. *Id.* at 19:15–20:5, 44:16–46:3. But notably, although Plaintiff says that the pain "still comes and goes," *id.* at 47:2, he has not offered any testimony that the pain prevented him from working or proceeding with everyday life beyond seven months. In fact, Plaintiff testified that he discontinued physical therapy after seven months, *id.* at 45:20–22, which suggests that the pain may not have impaired his ability to function thereafter. He simply has not provided any evidence of physical trauma, mental condition, or lasting disability that could justify millions of dollars in damages. Plaintiff also has not offered any records relating to his medical expenses, such as records from his emergency room visit, his pain management appointments, or his physical therapy. He did not produce any such records during pretrial discovery and this Court therefore excluded his testimony regarding his medical expenses at trial. *Id.* at 20:17–22:11.

In terms of mental anguish, Plaintiff testified that he was so depressed that he was unable to be "really functional and do much of anything." *Id.* at 47:18–21. But there is no evidence in the record that such depression persisted over time, resulted in any physical symptoms of stress, or required counseling or medication of any sort. As the Fourth Circuit held in a similar case, "[a]lthough none of these factors is a prerequisite to the receipt of compensatory damages, their absence reflects a degree of injury incompatible with the jury's sizeable award." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998); *see also Robles v. Prince George's Cnty., Maryland*, 302 F.3d 262, 271 (4th Cir. 2002) (upholding district court's decision to remit an award of $647,000 in damages for an arrestee's unlawful detention, in part because "no medication or counseling was required to resolve" his emotional distress).

Finally, the fact that the jury awarded identical verdicts against Lann and Reed calls into question whether the jury adhered to this Court's instructions to "not award damages more than

once for the same injury." Trial Tr., Vol. V at 31:14–21. The evidence differed with respect to the actions taken by Lann and Reed and the degree of violence used. *Compare* Trial Tr., Vol. IV at 38:1–23 (Lann's punches), *with* Trial Tr., Vol. II at 61:18–21, *and* Trial Tr., Vol. III at 118:16–18 (Reed's pepper sprays). The existence of identical figures in both verdict forms suggests that jury may have viewed those figures as the total amount owed for harm that Plaintiff suffered. Of course, for purposes of this motion, this Court assumes that the jury followed its instructions and construes the verdict as the total of both forms. *Cf. United States v. Benson*, 957 F.3d 218, 230 (4th Cir. 2020). The amount is excessive either way.

When a reviewing court concludes that a jury's damages award is excessive, it is the court's duty to require a remittitur or order a new trial. *Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 285 (4th Cir. 2021) (internal citations and quotation marks omitted). In determining the appropriate amount for remittitur, a court looks to the outermost award that could be sustained by the evidence. *Id.* The problem here is the fundamental lack of evidence to support a sizeable award of damages. Because of the amorphous nature of the testimony provided and the lack of meaningful documentary evidence, this Court cannot ascertain the outermost award that can be sustained in this case. Thus, while ordering a new trial *nisi remittitur* is an "option," *Cline*, 144 F.3d at 305 n.2, it is an option that the Court rejects, *see Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001). Instead, the Court will vacate the grossly excessive $2,750,000 damages award and order a new trial on damages alone. The issue of damages (*e.g.*, the severity of Plaintiff's injuries and amount of medical expenses) is distinct and separable from the issue of liability such that a trial of damages alone may be had without injustice.

The Court declines to order a new trial on liability because the jury's determination of liability does not suffer from the same defects as its determination of damages. Ample evidence

and testimony exist about the physical incident such that a reasonable jury could conclude that both Lann and Reed used excessive force, committed battery, and were grossly negligent.

A separate Order follows.

Dated: May 29, 2024                                   _____/s/_____
                                                      Stephanie A. Gallagher
                                                      United States District Judge